SMALL *et al. v.* SLOCUMB *et al.*

1. The vendor of land who retains title thereto for the purpose of securing the payment of the purchase-money can not by injunction prevent the vendee from clearing the land and cutting the timber thereon, unless such acts impair the value of the vendor's security.
2. The evidence being conflicting upon this point, this court will not interfere with the discretion of the trial judge in finding that the value of the vendor's security was not lessened by the acts of the vendee.
3. Congress has power to levy and collect taxes by requiring revenue stamps to be placed upon certain written instruments, and has power to prescribe a punishment for the failure or refusal to comply with that requirement, and to provide that such instruments shall not, unless stamped, be admissible as evidence in the Federal courts. It has, however, no power to prescribe rules of evidence for a State court, and, therefore, the act of Congress which declares that certain written instruments shall not be received in evidence in any court until stamped as required by the act is to be understood as applicable to the Federal courts only.

Argued November 9, — Decided November 27, 1900.

Petition for injunction. Before Judge Hart. Jones superior court. August 9, 1900.

*Hall & Wimberly* and *Dessau, Harris & Harris,* for plaintiffs.

*George S. Jones, Hardeman, Davis & Turner,* and *Hardeman & Moore,* for defendants.

SIMMONS, C. J. It appears from the record that Small and Lowe brought an action of ejectment against Mrs. Pottle. On October 17, 1898, a consent decree was entered into by the parties, whereby the plaintiffs were recognized as the owners of the land, and wherein it was provided that Mrs. Pottle should have the right to redeem the land by paying to the plaintiffs, within five years from the date of the decree, the sum of $6,100 principal, with interest thereon at eight per cent. per annum to the time of payment, the interest being payable annually. The details of this consent decree need not be mentioned here, save to say that it contained the following clause: " It being the purpose of this agreement that said decree shall operate as a bond for title from the plaintiffs to the defendant, the plaintiffs having agreed to sell said property to the defendant under the terms herein above set forth." On October 19, 1899, Mrs. Pottle executed a lease of the land to Mrs. Slocumb for the period of ten years, commencing January 1, 1900. By this lease Mrs. Slocumb bound herself to pay a rental of $658 per annum, out of which

was to be paid to Small and Lowe a sum sufficient to cover the interest annually becoming due to them from Mrs. Pottle. Mrs. Slocumb was by this lease given the privilege of paying off the principal debt of $6,100 and taking the rights of Small and Lowe in the premises, except that Mrs. Pottle should have the right to redeem the land at the expiration of the lease, and not before. Mrs. Slocumb undertook, by the terms of the lease, to build tenant-houses on the place, and was given the privilege and right of cutting and sawing the timber except on certain specified portions of the land, for the purpose of sale or otherwise. Mrs. Slocumb entered upon the place, and was proceeding to cut some of the timber and clear up a part of the land, when Small and certain persons who claimed under Lowe filed against Mrs. Slocumb and her husband and the administrator of Mrs. Pottle a petition for injunction, on the ground that the defendants were committing waste, and that the cutting of the timber would depreciate the plaintiffs' security. Both plaintiffs and defendants read before the trial judge a great many affidavits on the question as to whether there had been any waste or any depreciation of the value of the property, and as to whether any such waste or depreciation would result from the acts sought to be enjoined. It is unnecessary to set out these affidavits, either literally or in substance, further than to say that they were conflicting, and that the judge was authorized by the evidence before him to find either that the acts complained of would depreciate the value of the property or that they would result in an increase in its value. He refused the injunction, and the plaintiffs excepted.

1, 2. Under the consent decree above mentioned, the relation of vendor and vendee was established between the creditors and Mrs. Pottle. The results were the same as though the former had sold the land to the latter, reserving title in themselves to secure the payment of the purchase-money and giving bond for titles binding them to convey when the purchase-money, with the agreed interest thereon, was paid. They sustained the same relation to each other, on the question of security, as mortgagee and mortgagor. Moses *v.* Johnson, 88 Ala. 517, 16 Am. St. Rep. 57. Mrs. Pottle had the right to transfer her bond for titles to Mrs. Slocumb, or to lease the land to her for a term of years. Mrs. Slocumb, as to the use of the land during this lease, stood in the shoes of. Mrs. Pottle. Practically the only real interest that the plaintiffs had in the land was

its value to them as security for the payment of the purchase-money. When that is paid, then, under the decree, they will be compelled to make title to Mrs. Pottle, her personal representative, or assigns. If Mrs. Pottle or Mrs. Slocumb do not by their acts lessen the value of the land in such manner as to make it insufficient fully to secure the plaintiffs, we think the latter can not complain. Certainly they can not complain if the value of the land is not at all impaired, or if it will be worth more cleared than before the timber was cut. To cut timber and clear land so as to make arable what was before woodland is not, in this State, waste unless the value of the land is thereby impaired. The judge found on sufficient evidence that the value of the land here involved would not be lessened by the acts complained of, and we can not say that he erred in so finding, nor interfere with his discretion in refusing the injunction sought by the plaintiffs.

3. On the trial of the case the defendants tendered in evidence the lease executed to Mrs. Slocumb by Mrs. Pottle. This was objected to by the plaintiffs, on the ground that it had not been stamped as required by the internal revenue act of Congress of 1898. It appeared that the lease had no stamp upon it. The judge overruled the objection and admitted the lease in evidence. The plaintiffs excepted and assigned this ruling as error.

We fully recognize the power of Congress to levy and collect taxes for the support of the government. We fully recognize its power to do this by the imposition of stamp duties, and to prescribe penalties for their non-payment. We also recognize its power to regulate the practice and procedure and to provide rules of evidence in courts established under the constitution of the United States. After much reflection and a careful and thorough investigation of cases in the courts of other States, we have come to the conclusion, however, that Congress has no power to prescribe rules of evidence for a State court. Under our system of government, the States retained all powers of sovereignty which were not granted to the general government by the constitution. They had the power to create and establish their own courts, and to regulate the practice and procedure, and to prescribe rules of evidence therein. There is nothing in the constitution of the United States which expressly or by implication gives to Congress the power to prescribe rules of evidence for the courts of the States. Of course

Congress, having the power to impose stamp duties, has the power to provide for the enforcement of their payment by any necessary and proper means.    But while to make unstamped instruments inadmissible in evidence in State courts would doubtless aid in compelling the payment of the tax, we think that such a method of collection is neither necessary nor proper, and is, therefore, not within the power of Congress.    The act of 1898 subjects to a penalty any one who fails or refuses to comply with the provisions as to stamping written instruments, and the Federal courts have ample machinery for the enforcement of this penalty.    No other method of enforcement would seem to be necessary, but, even if it were, Congress has power to provide that no unstamped instrument shall be received in evidence in any of the Federal courts. An attempt to extend this provision so as to make it applicable to the courts of the several States can not, therefore, be defended upon the ground that it is necessary.    Nor do we think it a proper means of enforcing the stamp act to interfere with courts peculiarly within the control of the several States, by declaring what shall or shall not be used as evidence in them, or to seek to make the State courts punish a failure to comply with the Federal stamp act by refusing to allow unstamped documents to be used as evidence in them.

This, however, is no new question.    It has been dealt with by the courts of many of the States.    We have searched diligently in the reports of the decisions of the various State courts, and have found but one State court of last resort which has made and adhered to a decision that Congress had the right to prescribe that an unstamped instrument should not be received in evidence in a State court.    This was in the case of Chartiers etc. Co. *v.* McNamara, 72 Pa. St. 278, dealing with an act of Congress which provided that certain written instruments should not be received or used as evidence in any court until properly stamped.    Even in that case the court did not hold generally that Congress could prescribe rules of evidence for State courts, but that it had power to provide, as it was said to have done in the act then under discussion, for " a disqualification attached to the [unstamped] document, making it incompetent to fulfill its purpose as an instrument of evidence, until the stamp duty is paid."    We must confess that we are unable to see the distinction thus sought to be drawn.    The instrument may

be perfectly legal and admissible in evidence in the State court, and yet, if it lacks the revenue stamp, Congress can say to the State court: "This instrument is disqualified, is incompetent to fulfill its purpose as an instrument of evidence, and must not be admitted or received in evidence by you;" and this, according to the case just cited, would not be prescribing a rule of evidence for the State court. Two of the five Justices, Thompson, C. J., and Sharswood, J., dissented. Nor are the reasons given for this decision at all satisfactory to our minds. It is based on the supposed necessity for such a provision in order to enforce the stamp tax, and we think that no necessity therefor existed. All other State courts which have dealt directly with this question hold, so far as we have been able to ascertain, either that Congress has no power to enact that certain documents shall be incompetent as evidence in a State court, or else, without deciding what power Congress has in the matter, that the act of Congress does not apply to the State courts but to the Federal courts only. Most of those decisions were made in cases arising under the acts of 1864, 1865, and 1866, but the act of 1898 is, with respect to the questions here discussed, substantially a copy of the former acts, and the reasoning of those decisions is in every way applicable here.

In the cases of Clemens v. Conrad, 19 Mich. 170, and Sammons v. Halloway, 21 Mich. 162, Judge Cooley, the great expounder of constitutional law in this country, shows by his reasoning that Congress has no power to prescribe such a rule of evidence for State courts, and that the act should, therefore, be construed as intended to apply to Federal courts only. In the former case he said, in part: "To make an instrument inadmissible in evidence because not sufficiently stamped is, however, quite a different thing from imposing penalties for a breach of the revenue laws. The latter punishes the guilty party or compels him to perform his duty to the government; the former imposes what may be sometimes equivalent to a forfeiture of rights upon any party, guilty or innocent, who chances to be so circumstanced that he can not make a showing of his rights in court without the production of the unstamped instrument. . . A law so highly penal, it is to be presumed, has been so framed as clearly to point out all the cases to which it was designed to apply, so as to leave nothing to inference. In attempting properly to construe it, it is proper to bear in mind the position of the

body which enacted it, relatively to the different legal tribunals of the country. Congress creates the courts which operate within the sphere of Federal sovereignty and administer the judicial power conferred by the constitution of the United States. For them it prescribes rules of evidence and may establish a course of practice. It has no such general power as regards the State courts. Those courts have another origin, and their rules of evidence and courses of proceeding are prescribed by a different legislative body. Waiving, in the present case, any discussion of the question whether the State courts are not agencies of State government which are beyond the sphere of the taxing power of the nation and fully at liberty to investigate in their own modes, under the laws of the State, the questions of fact which are put in issue before them, we think it a just and reasonable interpretation of the law of Congress that the courts which are precluded from receiving unstamped instruments in evidence are only the Federal courts. . . We think that a rule of evidence laid down in general terms is to be understood as applicable to those courts only for which the legislature prescribing it has general power to make rules, and not to other courts, not expressly named, over which it has no such general power and with whose proceedings it could interfere, if at all, only in exceptional cases." See also Cooley, Const. Lim. (6th ed.) 592 and note.

In the case of Latham *v.* Smith, 45 Ill. 29, it was decided, Mr. Chief Justice Breese delivering the opinion, that "no power exists in the Congress to declare by law what shall or shall not be evidence in a State court." And in the case of Craig *v.* Dimock, 47 Ill. 308, the same eminent jurist said: "To hold that Congress, in the exercise of the taxing power, can enter into these [State] courts and prescribe what shall be evidence therein, is so revolting to all our notions of Federal and State power as to compel us to refuse to yield any acquiescence in such a doctrine. By admitting it, the power and sovereignty of the States over legitimate subjects of State power and sovereignty are at once annihilated. We will not deny the power of Congress to require such instruments to be stamped, nor the consequent power to punish by fine an intentional evasion of the law. By conceding this, we yield all that is necessary to enable the government to carry into full effect the taxing power, and at the same time sustain and uphold in its utmost limit the exclusive power of the State to say what shall be evidence in

her own courts of justice, in a domestic transaction, wholly uncon-
nected in every respect with the general government. It is not
questioned that the Congress has power to prescribe rules of evi-
dence and specify what shall be instruments of evidence in the
Federal courts, but is powerless to prescribe them for the State
tribunals, as we think. Since the act, then, does not in terms pre-
scribe such rules to State courts, we must conclude that the provi-
sions of the act were only intended to apply to the Federal tribunals.
We will not, by implication, hold that the intention of the Con-
gress was to invade the jurisdiction of the States in the adminis-
tration of justice between their citizens." These rulings were fol-
lowed in the cases of Bunker v. Green, 48 Ill. 243; United States
Express Co. v. Haines, 48 Ill. 248; Hanford v. Obrecht, 49 Ill. 146;
and Bowen v. Byrne, 55 Ill. 467. In the case of Wallace v. Cravens,
34 Ind. 534, it was held: "The Congress of the United States can
not control the rights of parties in the introduction or the weight
of evidence in a State court, in a case which arises purely under
the laws of the State and is properly before such court, against the
laws of the State." In the case of Duffy v. Hobson, 40 Cal. 240,
it was said: "The act, however, does not in terms extend to pro-
ceedings had under the laws of the State, and does not, on its face,
import any interference with those laws. Upon the settled rules
of interpretation, it must be construed to embrace only proceedings
had and acts done in public offices and courts established under
the constitution of the United States and by authority of acts of
Congress framed in pursuance thereof. But if the act of Congress
under consideration had in terms embraced the State courts within
its provisions and had enacted that upon a trial in one of those
courts a contract or other instrument of evidence, otherwise admis-
sible, should not be admitted in evidence except upon compliance
with its provisions, it would be our duty to declare its provisions in
that respect null and void. Congress has no constitutional authority
to legislate concerning the rules of evidence administered in the
courts of this State nor to affix conditions or limitations upon which
those rules are to be applied and enforced; nor can it rightfully
convert those courts into tax-gatherers for the benefit of the Federal
government, nor charge them with the duty of inquiring whether
or not the revenue laws of the United States have been observed,

or of investigating into the motives of parties in omitting to affix revenue stamps to the contracts they may have made."

In the case of Pargoud *v.* Richardson, 30 La. Ann. 1286, Manning, C. J., delivering the unanimous opinion of the Supreme Court of Louisiana, said: "Since Maurin *v.* Martinez, 5 Mart. 436, it has not been doubted that the provisions of the Federal constitution relative to juries refer only to trials in the Federal courts and do not apply to the State tribunals. And earlier than then it was held that the amendment to the Federal constitution, which requires the intervention of a grand jury, relates only to crimes cognisable by the United States and to criminal proceedings in its courts: Territory *v.* Hatick, 2 Mart. 88. When, then, the Congress prohibits a court from receiving in evidence any unstamped note or mortgage, we must assume that it has reference alone to the United States courts, as its prohibition is only obligatory upon them. It is said, however, that nothing is left to inference, since the act of Congress declares that these unstamped instruments are void. . . It is not needful for us to consider this act in any other aspect than its attempt to impose rules upon the State courts as to the admission of evidence. It is not within the province of Congress to enact rules regulating the competency of evidence upon the trial of causes in a State court. The power to lay taxes is undoubted, but it is not broad enough to include the authority to declare that a written instrument of any kind shall not be received as evidence in a State court unless it is stamped. That is a restriction which appertains alone to the legislative authority of the State. In domestic transactions, in no manner connected with the general government, the State has the exclusive power to establish the rules of evidence in her own courts." This was followed and unqualifiedly approved in the case of Holt *v.* Liquidators, 33 La. Ann. 673. To the same effect see Hunter *v.* Cobb, 1 Bush (Ky.), 239; Sporer *v.* Eifler, 1 Heisk. (Tenn.) 633; People *v.* Gates, 43 N. Y. 40, as explained in Moore *v.* Moore, 47 N. Y. 467; Bumpass *v.* Taggart, 26 Ark. 398; More *v.* Clymer, 12 Mo. App. 11; Forcheimer *v.* Holly, 14 Fla. 239 (5); Hale *v.* Wilkinson, 21 Gratt. (Va.) 75; Crews *v.* Bank, 31 Gratt. 348; Davis *v.* Richardson, 45 Miss. 499. A number of State courts have held, without passing upon the power of Congress to provide that unstamped instruments shall not be received in evidence in State courts, that the act did not in fact apply to any but Federal

courts. See Carpenter v. Snelling, 97 Mass. 452; Lynch v. Morse, 97 Mass. 458; Green v. Holway, 101 Mass. 243; Moore v. Quirk, 105 Mass. 49; Griffin v. Ranney, 35 Conn. 239; Haight v. Grist, 64 N. C. 739; Weltner v. Riggs, 3 W. Va. 445. We have also found two cases decided by State courts of last resort since the act of 1898 went into effect. In the case of Knox v. Rossi, 48 L. R. A. 305, the Supreme Court of Nevada held that State courts are not within the provisions of the act of 1898 as to the admissibility of unstamped documents in evidence. Prior decisions of the court, under former acts, apparently holding to the contrary, were explained as having been made without passing directly upon the question of the applicability of the act to State courts. In the recent case of Cassidy v. St. Germain, 46 Atl. Rep. 35, the Supreme Court of Rhode Island held the act of 1898 to be applicable to Federal courts only, and not to State courts.

According to the note in volume 48 of the Lawyer's Reports Annotated, 305, "it has been held that the provision of the act of 1898, excluding unstamped instruments from evidence, does not apply to the State courts," in the cases of Loring v. Chase, 26 Misc. 318, 50 N. Y. Supp. 312; People v. Fromme, 35 App. Div. 459, 54 N. Y. Supp. 833; Gregory v. Pub. Co., 63 N. Y. Supp. 975.

There are other cases to be found in the reports, where the construction of the acts was under consideration, but where no question was made as to the applicability of the acts of Congress to State courts or as to the power of Congress in this regard. Among these are the cases of *Green* v. *Lowry*, 38 *Ga.* 548, *Alexander* v. *Lieth*, 39 *Ga.* 180, *Hoops* v. *Atkins*, 41 *Ga.* 109, *Kile* v. *Johnson*, 48 *Ga.* 189; as are also such Alabama, Texas, and Wisconsin cases upon the subject as we have been able to find. These cases are not authority on the question as to whether the stamp act of Congress applies to State courts or only to Federal courts, or as to whether it is within the power of Congress to make such an act applicable to State courts. These questions were not made and were not decided. Had the questions been raised, the results of those cases might have been entirely different. Those of the cases which decided that an unstamped instrument was inadmissible in evidence only where the failure to stamp was with intent to evade the act were said by Manning, C. J., in Pargoud v. Richardson, supra, to hold "not a safe or certain doctrine, . . but one born of

a wish to recognize a doubtful power and at the same time to restrict it within such limits that its exercise would not impinge the authority of the State." In Colorado the stamp laws were held to be applicable to the Colorado courts, because Colorado was not a State but a territory of the United States. For collections of cases upon this and kindred subjects, see Ash, Int. Rev. Laws, 373 et seq., 381 et seq.; Gould & Savary, War Rev. Law of 1898, 31, 43 et seq., 80; Gould & Tucker, Notes on Rev. Stat. U. S. 695; 7 Albany Law Journal, 49; notes to Knox v. Rossi, 48 L. R. A. 305. On the whole we have no hesitation in ruling as we do; for we are satisfied that our ruling is right in principle, and supported by the very decided weight of authority.

<em>Judgment affirmed.    All the Justices concurring.</em>