1426.	GUIN *v.* HILTON & DODGE LUMBER COMPANY.

1. One in possession of land under bond for title who furnishes a sawmill with logs cut from the land may proceed under section 2809 of the Civil Code to foreclose his lien; and the fact that the owner of the sawmill has paid the purchase-price of the logs to the holder of the legal title to the land, taken or retained to secure the payment of the purchase-price, but who has taken no steps to protect the value of the property, nor prosecuted to a successful conclusion an action to recover possession of the premises, affords no defense to the foreclosure of the lien.
2. It was error to admit in evidence a mortgage and certain notes which were irrelevant and which tended to confuse the jury and becloud the issues to the injury of the party objecting thereto.

Lien foreclosure, from city court of Mount Vernon—Judge Geiger. September 14, 1908.

Submitted December 9, 1908.—Decided July 3, 1909.

*M. B. Calhoun, W. B. Kent,* for plaintiff.

*W. M. Lewis,* for defendant.

RUSSELL, J. Guin was proceeding to foreclose a lien under the provisions of section 2809 of the Civil Code, by levying upon 25,-000 feet of yellow-pine lumber, claiming that he was entitled to a lien by virtue of a contract under which he had furnished the Hilton & Dodge Lumber Company certain yellow-pine timber and logs. The Hilton & Dodge Lumber Company filed a counter-affidavit alleging, (1) that they were not indebted to the plaintiff in any sum whatever; (2) denying the existence of the lien claimed by the plaintiff and that the defendant contracted with him as alleged in his affidavit; and (3) denying that any demand had ever

been made upon it or any of its agents. Upon the trial of the is-
sue formed by the counter-affidavit the jury found in favor of the
defendant. The plaintiff thereupon made a motion for a new
trial, and excepts to the judgment overruling it. It appears from
the plaintiff's evidence that he made a contract with the defend-
ant, through its agent Sedwick, to furnish its sawmill certain logs
at an agreed valuation; that he had furnished 57 logs at the de-
fendant's mill, of dimensions upon which the price had been agreed
to be $7.50 per thousand feet. The plaintiff testified that he had
made demand upon Sedwick before instituting suit, and that at the
time of the demand the contract had been completed. The defend-
ant did not offer any testimony denying that the contract had been
made as claimed by the plaintiff, nor prove that the logs had not
been furnished, or that Sedwick was lacking in authority to bind
it in the transaction. The only ground of the defendant's counter-
affidavit. supported by any evidence is that the plaintiff did not
have legal title to the logs furnished by him to the mill. It was
proved that the plaintiff held possession of the land from which
the logs were cut, under a bond for title.

1. The question which arises for determination, therefore, is
whether one who holds a tract of land under bond for title is the
owner thereof in such a sense as that he can foreclose the special
lien created by law in favor of a person who furnishes logs to a
sawmill. Or, to state the question with more special reference
to the facts involved in this case, can one admittedly furnished
with logs for the maintenance of his sawmill raise the question
that he who furnished the logs has only an equitable interest in
the land from which the timber was cut? After a very diligent
search we have been unable to find any direct adjudication upon
the subject. This is perhaps due to the fact that the statutory
remedy of which the plaintiff sought to avail himself is peculiar
to this State. This statute is found in the Civil Code, §2809,
and is as follows: "All persons furnishing sawmills with timber,
logs, provisions, or any other thing necessary to carry on the
work of sawmills, shall have liens on said mills and their products,
which shall, as between themselves, rank according to date, and
the date of each shall be from the time when the debt was created,
and such liens shall be superior to all liens but liens for taxes,
liens for labor, as provided for in sections 2792, 2793, and 2808,

and all general liens of which they have actual notice before their debt was created, to which excepted liens they shall be inferior." This statute seems to leave it in doubt as to whether one who has furnished a sawmill with any of the necessary articles mentioned would not have a lien even if his title to the article furnished is not absolutely perfect. It can scarcely be questioned that one who has furnished to a sawmill logs he has bought from a third person or has employed laborers to cut could enforce the lien against the sawmill, notwithstanding that the logs are subject to a claim for purchase-money or a lien for labor. In such a case the title of the one who furnished the logs would in a sense be encumbered. The holder of a bond for title who is in possession of the land has the equitable title thereto, and, in consequence of his possession and of his ownership of the equitable title, he has the absolute right to control the property and all its appurtenances. Where the vendor reserves the legal title merely for the purpose of securing the payment of the purchase-money, and gives bond for title (which is not a contract of penalty in case title is not made, but a contract prescribing that title shall be made) the legal effect of the situation, under section 2771 of the Civil Code, is not different from that which would arise if the vendor had made a deed to the vendee and then taken a. mortgage back to secure the indebtedness. In the present case the plaintiff purchased the land from Morrison, and Browning advanced the money, or a part thereof, to pay the purchase-price. So far as the record shows, Browning had never himself owned the land, and had never been in possession of it. It is undisputed that the title was plactd by Morrison in Browning merely to· secure the repayment of the money advanced by him to the plaintiff, and that, by the bond for title given by Browning to the plaintiff, Browning contracted that on payment of the debt by the plaintiff the legal title would be conveyed to him. In other words, the deed held by Browning, while effective to put the legal title in him, was after all a mere security for a debt. It is true that Browning, in the event of failure to pay that debt, could have recovered possession of the land from the plaintiff by suing in ejectment, but if he had so recovered it he would have been liable to account for the application of the profits in payment of the indebtedness, and in certain contingencies might be required to restore the plaintiff to his possession, if the rents, issues, and

profits amounted to enough to discharge the debt with interest and costs. Or Browning could proceed by suing his notes to judgment and filing a deed to the debtor in accordance with the statute, and, by subsequent levy and sale and purchase, perfect the title in himself, if he preferred to take this course rather than proceed by ejectment. It is plain, however, that, whichever remedy Browning might pursue, he could not, without some such proceeding, be said to be the owner of the land or of the timber growing thereon. One in possession of land under bond for title, with part of the purchase-money paid, has the unqualified right to possess it and to use it as he may think best, except that the holder of the legal title might proceed by injunction to prevent waste or other acts upon the property which would tend to diminish or depreciate his security. The fact that injunction is a proper remedy only when the holder of the legal title can show that the value of his security is being depreciated or diminished is strong proof that the law does not contemplate that he shall have any interest in the land other than a right to a security for the payment of his debt, and that with this exception the holder of the bond for title is the full and complete owner of the land. It is a matter of common knowledge and well-nigh universal practice in this State that transactions in realty containing valuable timber or mineral deposits are made upon the understanding, either expressly stated in the course of the negotiations leading up to the sale, or tacitly so understood, that the purchaser will be able to pay the purchase-price, in large measure, by a conversion of these natural resources into money. And it must be borne in mind that while at common law the cutting of timber was waste, in this country the clearing of arable land frequently adds to the value of the property, and that therefore the cutting of timber is not necessarily waste. In *Small* v. *Slocumb,* 112 *Ga.* 279, 281 (37 S. E. 482, 53 L. R. A. 130, 81 Am. St. R. 50), it is said: "To cut timber and clear land so as to make arable what was before woodland is not, in this State, waste unless the value of the land is thereby impaired."

That the plaintiff in this case, who was the holder of a bond for title to the land from which the logs were cut, and was in possession, having paid part of the purchase-money, had such an interest in the logs as would enable him to enforce his lien as against the defendant, under the circumstances, seems to be in effect the hold-

ing of the Supreme Court in cases where similar propositions were involved. In *Fulton County* v. *Amorous,* 89 *Ga.* 614 (15 S. E. 201), the holder of a bond for title was held to have a right to sue for damages to the freehold because a portion of her property had been appropriated by the county for a public road; and her bond for title was admitted in evidence, over the objection that it showed no title or right of action in her. In ruling upon this point the Supreme Court held that one in possession of property under bond for title from the true owner, with the purchase-money partly paid, is the owner of the freehold relatively to all persons except the maker of the bond and those claiming under him. In *Broxton* v. *Ennis,* 96 *Ga.* 792 (22 S. E. 945), the question was as to whether the rent was payable to the holder of the bond for title or to the holder of the legal title, it appearing that the tenant had contracted to pay the rent both to the vendor and to the vendee; and the Supreme Court, speaking through Mr. Justice Atkinson, said: "Where the tenant undertakes to acknowledge a tenancy both under the vendor and the vendee, and distress warrants are issued at the instance of both the vendor and the vendee, . . the warrant in favor of the vendee is the legal lien, and should prevail." This decision is in effect a holding that the vendee in possession under a bond for title is to all intents and purposes the owner of the land until the vendor, in some manner prescribed by law, recovers possession of the land. Certainly merely to inform one who has contracted with the vendee that the timber sold by the vendee from the land in question is the property of the vendor, and that payment therefor should be made to the vendor, is not such a proceeding as could affect the rights of the vendee under his contract; and one who acted upon such a statement must be held to have done so at his peril. The owner of the sawmill undertook to decide for himself to which of the claiming parties the money should be paid, and his decision that it should be paid and his payment of it to the vendor could not in any way affect the rights of the vendee, of which he had full notice. We conclude therefore that the court erred in charging the jury that if they found from the evidence that growing trees were cut, which became logs only after being cut, and the land on which they were cut was held by the plaintiff under a bond for title, and the purchase-price had not been paid, the plaintiff would not have the legal

title to the trees growing on the land, and would not have the right to cut and sell them.

2. The defendant introduced in evidence, over objection of the plaintiff that they were irrelevant, incompetent, inadmissible, and illegal, and did not tend to illustrate any of the issues involved in the case, certain notes which the plaintiff had given to Browning for rent and for fertilizers, and also a mortgage given by the plaintiff to Browning, covering certain crops of corn and cotton. We are clear that the objection to these papers was well taken, and should have been sustained. The only issue being whether the plaintiff had furnished the logs for which he was seeking to foreclose his lien and whether he had a right to foreclose, these papers were in no wise relevant, and tended to prejudice the jury to the injury of the plaintiff.                                    *Judgment reversed.*

POWELL, J., concurring specially. The fact that the holder of the legal title got the money, and that the plaintiff got the benefit of this payment, strongly impresses me; but I am in too much doubt to justify my dissenting from the views ably presented by my colleagues.