## 9656.   SCOTT & COMPANY *v.* WARD.

Where a vendor of land executed to the vendee a bond for title and delivered to him the possession of the land, and thereafter the vendee rented the land and transferred the rent contracts to the vendor, the only legal effect of the transfer was to place the title to the rent contracts in the transferee and "carry the liens as a necessary incident thereof," as provided in the Civil Code of 1910, §§ 3345, 3346, and with the right in the transferee to enforce the liens arising under the contracts as provided in § 3347 of the code.

(a) The fact that the transferee of the rent contracts was also the vendor of the land did not cancel or rescind the original contract of sale, or create the relation of landlord and cropper between the vendor of the land and those cultivating it under contract with the vendee, nor did it place the title to any portion of the crop in the vendor.

DECIDED FEBRUARY 12, 1919.   REHEARING DENIED FEBRUARY 28, 1919.

Complaint; from city court of LaGrange—Henry Reeves, judge pro hac vice. February 26, 1918.

In the fall of 1913 Ward sold certain lands on credit to Hogg, taking notes for the purchase-price and giving a bond for title. On January 24, 1916, Hogg executed and delivered to Ward the following paper: "For value received I hereby transfer and assign to W. A. Ward my landlord's liens for the year 1916, on all crops of the tenants hereinafter named, and also transfer and assign to W. A. Ward the rents due me by the following named tenants for the year 1916; said tenants being Major Cooley, one-horse farm on halves; Geo. Lynch, one-horse farm on halves; Peter Brooks, one-horse farm on halves; Sam Lovelace, alias Sam Sherman, one-horse farm on halves; William Lovelace, 1-1/2 bales of cotton, standing rent; William Lovelace Jr., 2 bales, standing cotton rent; J. W. Ward, 2 bales cotton, standing rent; Richard Key, 2 bales, standing rent; Abb Copeland, 600 lbs. lint cotton, standing rent; Tom Winston, 4 bales, standing rent; A. F. & S. F. Ward, 4 bales, standing rent; said bales to be 500 lbs. each, of middling cotton, packed in merchantable bales delivered in West Point; also all rent of all tenants on the Palmer home place, on which there will be run a 4-horse farm on halves. These rents are due and payable October 15, 1916. These rents are given for the land purchased by me from W. A. Ward, and are for the rent of the lands for the year 1916, and are to be turned over to W. A. Ward, to be credited to the indebtedness I am now due him for the purchase of said lands. It is the intention of this paper to transfer and assign all my rights and liens as landlord so that W. A. Ward may enforce his landlord's lien for rents and supplies and advances he may furnish said tenants to make crops for the year 1916. Witness my hand and seal, this January 24, 1916."

Hogg applied to Scott & Company, merchants dealing in farm supplies, to furnish his tenants for the year 1916, and they agreed to do this on condition that Ward would waive a certain amount of rent for each of Hogg's tenants. This he did on April 6th. There were six of these "waivers," all alike except as to name of tenant, amount of land to be cultivated, and amount of rent cotton to be waived. The following is a copy of one of them: "In order to enable W. F. Hogg and Perry Green to get mule, guano, and supplies to make a crop on my farm which I have rented him for the

27

year 1916, I agree to let him use first 3,000 lbs. middling lint cotton. Completing my rent for two-horse farm on place known as ————farm for the year 1916. All other farm products to be subject to indebtedness with Scott & Co. I also agree not to furnish him anything as landlord for the year 1916." After receiving these "waivers" Scott & Company furnished the tenants and charged the account of each tenant to him and Hogg. In the fall of 1916 Hogg and his tenants delivered certain cottton and cottonseed to Scott & Company. Ward claimed that a half of the cotton and cottonseed delivered to Scott & Company belonged to him as landlord, and, upon their failure to make settlement with him therefor, he filed a petition against them, alleging that he was the owner of the lands upon which this cotton and cottonseed had been raised, that he was farming thereon, that said lands "were operated by croppers of petitioner," and that "defendant agreed to furnish the croppers of petitioner during said year, on condition that petitioner would waive his rights as landlord so that the croppers could secure the defendant for supplies furnished, which condition was met by petitioner, he waiving in writing his rights as landlord, for the purpose of having said croppers buy such supplies as necessary for the purpose of making a crop." He further alleged that his croppers delivered to defendants the cotton and cottonseed raised by them, and a half of the cotton and cottonseed of each cropper was sufficient to pay the indebtedness of that cropper, and the other half of the cotton and cottonseed belonged to him. Defendants filed a plea denying liability, and further pleading that the plaintiff was not landlord, but that Hogg was the owner of the land and in possession thereof, and that the supplies they furnished were to Hogg and his croppers, and were so charged on their books, "all of which was done with the knowledge of said W. A. Ward." Defendants further pleaded that they had made full settlement with Hogg and his croppers. The issues raised by the pleadings were submitted to the jury, they rendered a verdict for the plaintiff, and the defendants excepted.

*B. J. Mayer,* for plaintiffs in error. *M. U. Mooty,* contra.

BLOODWORTH, J. (After stating the foregoing facts.) The plaintiff testified, in part, as follows: "I sold the property to Hogg in the fall of 1913, and gave him a bond for title. I don't know where the bond for title is. I gave it to him, and it is his property,

and still his property; it is my property but his bond. I have not paid taxes on it since then, and haven't given it in for taxes. Hogg hasn't paid me for it, and I still hold his notes. When this transaction took place Hogg was in possession of the property. In 1916 he came to me and told me he was unable to go further and was unable to furnish his hands and was unable to meet his payment, and we went into this written agreement under this contract. I didn't consider that Hogg was still the landlord. My attorney told me I was in possession under this contract and that Hogg was not under the bond for title. I signed the waivers to furnish certain hands and W. F. Hogg, which was done at the request of Hogg." The "written agreement" referred to in the evidence just quoted is the paper copied in the statement of facts, and dated January 24, 1916. A copy of the "waivers" referred to will also be found in the statement of facts. A part of the evidence of Hogg is as follows: "I hold land that I hold under bond for title that I purchased from W. A. Ward; I held this land in 1916; I purchased the land from W. A. Ward in 1913, and I was in possession of the land in 1916 and am in possession of it now; I know Sam Lovelace, Major Cooley, Whit Davidson, Perry Green, Peter Brooks, and Geo. Lynch; they were tenants in 1916 on the lands I purchased from W. A. Ward; they were working that year on halves; I. M. Scott & Co. furnished them at my request. . . I paid the taxes on the property in 1916 and 1915. . . I made the agreements with these negroes for the year 1916 and Ward did not make them and he never had anything to do with them."

Under the foregoing facts it is quite clear that the relation of landlord and cropper never existed during the year 1916 between Ward and those who cultivated the land sold by him to Hogg. The evidence shows that Ward sold the land to Hogg, gave him bond for title which Hogg still held, and Ward held the notes given for the purchase-price of the land. In *Broxton* v. *Ennis, 96 Ga.* 792 (22 S. E. 945), it was held: "Where, under a contract for the sale of land, the vendor executes to the vendee the usual bond for titles, and delivers to him the possession of the premises, even if the latter fail to pay the purchase money at maturity, he may nevertheless retain possession, either by himself or his tenant, until such time as he shall be legally evicted therefrom by the vendor; and the tenant who enters under the vendee cannot, without first surrendering his

possession to the latter, attorn to the vendor upon any supposed right of the latter, without the consent of the vendee to rescind the contract of sale." In the case of *Guin* v. *Hilton & Dodge Lumber Co.,* 6 *Ga. App.* 488 (65 S. E. 332), this court referred to *Broxton* v. *Ennis,* supra, and said: "This decision is in effect a holding that the vendee in possession under a bond for title is to all intents and purposes the owner of the land until the vendor, in some manner prescribed by law, recovers possession of the land."

Applying the rulings in those cases to the facts of the one now under consideration, we must hold that Hogg was landlord and that the only legal effect of the paper of January 24, 1916, was to transfer to Ward the title to the rent contracts and "carry the liens as a necessary incident thereof," as provided by §§ 3345 and 3346 of the Civil Code of 1910, with the right in him to enforce the liens arising thereunder as provided in § 3347 of said code. It did not cancel or rescind the contract of sale of the land made by Ward to Hogg, nor did it change the relation between Hogg and the tenants and make Ward landlord, nor did the "waivers" signed by Ward have this effect. It will be noted that in the agreement of January 24, 1916, Hogg transfers to Ward his liens for 1916 "on all crops of the *tenants* hereinafter named," and also transfers and assigns to Ward "the *rents* due me by the following named tenants for the year 1916." This transfer says also: "These rents are due and payable Oct. 15, 1916; these rents are given for the lands purchased by me from W. A. Ward and are for the rent of the lands for the year 1916, and are to be turned over to W. A. Ward to be credited on the indebtedness I am now due him for the purchase of said lands." As the petition was based upon the allegation that the plaintiff was the landlord and that the parties cultivating the land were his "croppers," and as the evidence clearly establishes the fact that he was not the landlord, and that the persons cultivating the land were not his croppers, and that he had only a lien on the cotton and cottonseed raised by the tenant, and not title thereto, the evidence fails to support the allegations of the petition. The verdict is therefore contrary to the law and the facts, and must be set aside. Under this ruling it is unnecessary to consider the special grounds of the motion for new trial.

*Judgment reversed.. Broyles, P. J., and Stephens, J., concur.*