## WASHINGTON LOAN AND BANKING COMPANY *et al.* v. WASHINGTON EXCHANGE BANK.

Where land is conveyed as security for a debt, the grantee executing a bond for title conditioned to reconvey upon payment of the debt, and subsequently the owner executes, subject to the first deed, another deed to secure money borrowed from another party, and also assigns and transfers to the holder of the second deed the bond for title executed by the grantee in the first deed, and a receiver is appointed for the grantor in the two deeds under an order of court which authorizes such receiver to take charge of all the assets of the debtor, but the land is sold by the grantee in the first deed under and by virtue of a power of sale contained therein, and the grantee in the second deed becomes the purchaser at such sale, but the receiver so appointed, continuing in possession, enters into an arrangement and agreement with a lumber company for the company to cut the timber, and the company under that agreement does cut and sell the timber, paying to the receiver a part of the proceeds, but reserving a part of the proceeds arising from the sale of the timber, the grantee in the second security deed (the purchaser of the land at the sale under the power contained in the first security deed) is entitled in equity to the fund held in the hands of the lumber company.

No. 5852. JANUARY 13, 1928.

Equitable petition. Before Judge Perryman. Wilkes superior court. January 13, 1927.

On November 1, 1924, Washington Exchange Bank (hereinafter called the Exchange Bank) brought its petition from which the

Mortgages, 41 C. J. p. 484, n. 67; p. 624, n. 77.

following appears: There was pending in Wilkes superior court, when the petition was filed, a case wherein Washington Loan & Banking Company is plaintiff, and G. T. Anthony, W. I. Henderson, and Frank Harper are defendants, and G. F. Strother Lumber Company and Lovelace-Eubanks Lumber Company are garnishees. In that case the Washington Loan & Banking Company, on September 28, 1922, sued out garnishment upon an alleged judgment in its favor against Henderson, Harper, and Anthony, and had summons of garnishment served upon the Strother Lumber Company and the Lovelace-Eubanks Lumber Company. Answer to each summons of garnishment was duly made, wherein the garnishees denied indebtedness to the defendants, etc. The Lovelace-Eubanks Lumber Company made a supplemental answer by way of amendment to its answer, alleging that it had in its hands the sum of $1680.43, which belonged to the estate of G. T. Anthony, but averred that it was unable to determine to whom the same should be paid, because of adverse claims thereto. It prayed that the several claimants be required to intervene and set up their respective claims; and for direction. On July 4, 1924, F. H. Ficklen, as administrator of the estate of G. T. Anthony, filed a petition for intervention and claimed the money in the hands of Lovelace-Eubanks Lumber Co. The Exchange Bank alleges that this money is not the property of the administrator or of the estate of Anthony, but is the property of the Exchange Bank and the National Bank of Wilkes, the Exchange Bank having a three-fourths interest therein and the National Bank of Wilkes a one-fourth interest, by reason of the following facts:

The money in the hands of the lumber company is the proceeds of certain timber originally growing on a tract of land particularly described in the petition. The G. F. Strother Lumber Company and Lovelace-Eubanks Lumber Company are one and the same corporation, the name having been changed. On September 28, 1921, the G. F. Strother Lumber Company undertook to purchase the timber in question from Anthony, under a written contract of purchase entered into between the vendor and vendee. At that time Anthony had no title or interest in the timber, he having, on January 1, 1919, executed and delivered to the trustees of the Penn Mutual Life Insurance Company an absolute deed to the land on which this timber was growing, for the pur-

pose of securing an indebtedness to the insurance company of $18,-000; and on December 16, 1919, Anthony executed to the Exchange Bank an absolute deed to the land on which the timber was growing, "with all his right, title, claim, equity, demand, and equity of redemption of the same," subject to the deed to the Penn Mutual Life Insurance Company; the purpose of the deed to the Exchange Bank being to secure an indebtedness of Anthony in the sum of $50,000, "as well as any other sums he might in the future become indebted to petitioner." At the same time Anthony transferred and assigned to petitioner a bond to reconvey, executed to him by the insurance company. Anthony died in April, 1922; and the trustees of the insurance company, in May, 1922, advertised the property for sale under the power conferred in the deed, and sold the same to F. H. Ficklen and R. W. Holliday for $17,-958, and on June 22, 1922, executed to them a deed to the property. Ficklen and Holliday, in purchasing the property from the trustees, were acting not for themselves in their individual capacity, but for and on behalf of the National Bank of Wilkes and the Washington Exchange Bank, who were the real purchasers. Ficklen and Holliday, still acting for these two banks, obtained a loan on the property of $16,000 from the Penn Mutual Life Insurance Company, and to secure its payment executed to the company a deed to the property. On July 29, 1922, Ficklen and Holliday entered into an agreement with the National Bank of Wilkes and the Exchange Bank, whereby the understanding that they were acting for and in behalf of the banks in all of said transactions was confirmed and ratified. Neither the Penn Mutual Life Insurance Company nor the banks consented to the sale of the timber in question by Anthony to the lumber company. Petitioner contends that by reason of the foregoing facts the title to the timber is in the two banks last named.

On January 17, 1922, W. I. Henderson had a sawmill located on the land in question, and was engaged in cutting said timber and sawing it into lumber for the Lovelace-Eubanks Lumber Company under the contract executed by Anthony to the lumber company; and on January 17, 1922, the Exchange Bank filed a petition against Anthony and Henderson and others, setting forth its claim of title to the land upon which the timber was growing, by virtue of the deed of December 16, 1919, and praying that Henderson

and Anthony be restrained and enjoined from cutting the timber. On January 18, 1922, the court appointed E. E. Moore and C. H. Orr as temporary receivers of all the property of Anthony, including the land in question, and passed an order enjoining and restraining Henderson and Anthony and their agents from cutting the timber. There was never a hearing on the matter or any further action on the petition, except that on August 16, 1923, F. H. Ficklen as administrator of Anthony was made a party defendant, and on the same day a consent verdict and decree were taken in favor of the John Hancock Mutual Life Insurance Company, one of the defendants in the case, touching matters wherein that company was interested, and those matters only; it being expressly provided in the decree that the case should be kept open for such further orders of the court as from time to time might be deemed necessary or advisable; and the restraining order has never been revoked or rescinded. Upon the appointment of Moore and Orr as temporary receivers they accepted the trust and immediately took charge of the estate, and have never been discharged. Petitioner charges, upon information and belief, that the receivers gave the Lovelace-Eubanks Lumber Company permission to complete the cutting of the timber under the contract of G. F. Strother Lumber Company with Anthony, and that the Lovelace-Eubanks Lumber Company did complete the cutting of the timber under some arrangement with the receivers. Petitioner did not consent to this arrangement nor was the same done by virtue of any order of court, and was wholly without any legal right or authority on the part of the receivers. The funds now in the hands of Lovelace-Eubanks Lumber Company were derived from this timber and are the proceeds thereof, and in equity should stand in the place of the timber, with the title thereto in petitioner and the National Bank of Wilkes. The estate of Anthony is entirely insolvent.

Among the prayers of the petition are, that the Washington Loan and Banking Company be enjoined from further prosecuting the garnishment case; that that case be merged into this proceeding; that the parties interested be required to interplead; that the court of equity adjudicate in this case all the rights of the parties; that the lumber company be required to pay into court the money in its hands, the proceeds from the sale of the timber, or in lieu thereof that petitioner have judgment against the lumber company

for the same; and for general relief. By way of amendment petitioner alleged, on information obtained since the filing of the petition, that the sum of $1680 went into the hands of the lumber company, but was afterwards paid into court pursuant to the order of the court, the same accruing subsequently to the appointment of the receivers, and being derived from the timber growing on the land conveyed by Anthony to petitioner. The lumber company, on March 17, 1922, paid $512.67 to Moore, one of the receivers, said sum representing the amount owing Anthony by the company on the contract to that date; and it was thereupon agreed between the lumber company and the receivers that Henderson should complete the cutting and sawing of all of the timber on the land, and that in order to enable him to do so the lumber company would make to him semi-monthly payments of $5 per thousand feet for the lumber sawed, stacked, and checked, according to the terms. of the contract between the lumber company and Anthony, and that when the lumber was delivered to the company it should pay to Henderson $2 per thousand feet and reserve $3 per thousand feet for the account of the receivers. The $1680.43 represents the sum accrued in the hands of the lumber company for the account of the receivers of Anthony under said agreement between the company and the receivers of Anthony and Henderson.

To this petition the defendants demurred upon the following grounds: (1) That no cause of action is set forth. (2) That it does not appear that the original petition filed by the Exchange Bank against Anthony and others, on or about January 17, 1922, in which an injunction was prayed, ever resulted in a judgment in favor of plaintiff against Anthony or any other person, except a judgment in favor of an intervenor in that case; or that any judgment has ever been rendered in favor of plaintiff against said Anthony or his administrator. (3) It affirmatively appearing from the petition that before the rendition of any judgment in favor of plaintiff, Anthony died in April, 1922, and that Ficklen was appointed as his administrator, said fund is required by law to be disbursed in the statutory order for the distribution of estates of deceased persons, and the year's support for the widow of Anthony is superior to the rights of either Washington Exchange Bank or Washington Loan and Banking Company. This demurrer the court overruled.

*J. M. Pitner, Colley & Wynne,* and *W. A. Slaton,* for plaintiffs in error.

*B. W. Fortson,* contra.

BECK, P. J.   (After stating the foregoing facts.)   We are of the opinion that under the facts alleged the court did not err in overruling the demurrer to the petition.   The title of the Washington Exchange Bank and of the National Bank of Wilkes to the timber at the time of its conveyance by Anthony to the lumber company was superior to any right or title that Anthony had to it; for he had been divested of any right or title under which he could sell the timber and appropriate to his own use the proceeds of such sale.   The bank held not only the conveyance of the land from him, but also a conveyance of all his title and equity of redemption in the land, and he had transferred to the bank his bond for title to the same.   The timber on the land went with the land, and the title to it went with the title to the land; and his attempted conveyance to the lumber company was a nullity until he should in some way have satisfied the claims of the bank, for the satisfaction of which this land was a pledge.   When Anthony was enjoined from cutting timber and the receivers for the property were appointed, the right and title of the bank to the timber (and when we say bank here we refer to both the Washington Exchange Bank and the National Bank of Wilkes) was not destroyed or impaired.   The possession of the receivers was possession for the benefit of creditors, subject to the rights of any prior lienholders or prior conveyances; and when the receivers had the timber cut, or when it was cut by virtue of an agreement with the receivers, and the same was sold, the fund derived therefrom was impressed with the equity and rights with which the bank was vested as completely as the timber itself was.   The sale of the land by the holders of the first security deed under the power of sale contained in such deed did not divest the bank of its right to the fund. The property at the sale was bought in by those who acted for the bank, and the bank never lost its title to the land and timber.   We think the contention of defendant in error is sound when it insists that, upon the receivers entering into an agreement for the lumber company to cut the timber and pay over to them a sum representing its value, the insurance company had the legal title to the timber as security for its loan to Anthony, and the bank had

title to Anthony's equity of redemption therein as security for its loan to him. The first claim upon the fund in the hands of the receivers arising from the sale of the timber was in the insurance company, and the second in the bank. The bank settled with the insurance company by buying in the land at the sale for the amount of that debt, and became entitled to have such fund applied to its claim. It was held by this court in *Small* v. *Slocumb*, 112 *Ga.* 279 (37 S. E. 481, 53 L. R. A. 130, 81 Am. St. R. 50), that "The vendor of land who retains the title thereto for the purpose of securing the payment of the purchase-money can not by injunction prevent the vendee from clearing the land and cutting the timber thereon, unless such acts impair the value of the vendor's security." And we think that this same rule would apply in a case where the owner of land has conveyed the title as security for a loan. The rule there stated has the proper qualification, and clearly could not be extended to hold that one who has parted with his title to land, including his equity of redemption, as a security for a debt, is authorized to denude the land of its merchantable timber growing thereon and convey title to the same as against the holder of the deed and the transferee of the bond executed by the grantee in the deed, for reconveyance of title. We think that what is said above clearly shows that the court properly overruled the demurrer to the petition. And the conclusion which we have reached seems inescapable when we consider that the sale of the timber upon the land had been made by agreement with the receivers, and the fund in the hands of the receivers arose from the sale of that timber under that agreement. The judgment of the court below is therefore　　　　　　*Affirmed. All the Justices concur.*