No. 6288. JANUARY 13, 1928.

---

### DARBY *v.* MUTUAL BENEFIT LIFE INSURANCE CO.

1. Injunction may be granted, on suit by a grantee in a security deed to land, to prevent cutting of timber growing thereon by one claiming right or title acquired from the vendor in the security deed after its execution and record, when such cutting will impair the value of the security.
2. On evidence conflicting as to whether such cutting of timber would lessen the grantee's security, it was not error to grant an injunction.

No. 6298. JANUARY 13, 1928.

Injunction. Before Judge Hardeman. Toombs superior court. September 26, 1927.

*W. M. Lewis,* for plaintiff in error. *B. P. Jackson,* contra.

HINES, J. 1. The vendee in a security deed can by injunction prevent one claiming under the vendor therein, by right or title acquired subsequently to the execution and record of such deed, from cutting for sawmill purposes timber growing upon the land conveyed by such instrument, when the cutting of the timber impairs the value of the vendee's security. *Small* v. *Slocumb,* 112 *Ga.* 279 (37 S. E. 481, 53 L. R. A. 130, 81 Am. St. R. 50); *Bitting* v. *Chattooga County Bank,* 159 *Ga.* 78 (124 S. E. 899); *Ponder* v. *Mutual Benefit Life Insurance Co.,* ante, 366. It is unnecessary in this case to decide whether the vendor in a security

Injunctions, 32 C. J. p. 31, n. 17.
Mortgages, 41 C. J. p. 623, n. 74; p. 649, n. 71.

deed, while in possession of land and before default in payment of the secured debt or interest thereon, can, as against the grantee in the deed, sell growing timber on the land embraced in the deed to be cut and removed therefrom for sawmill purposes, where the sale of the growing timber would not impair the value of the security.

2.   Under conflicting evidence upon the question whether the cutting of the timber lessened the vendee's security, the court below did not err in granting an injunction restraining the defendant from cutting and removing the timber upon the land embraced in the security deed.

*Judgment affirmed. All the Justices concur, except*

RUSSELL, C. J., dissenting. As appears from the record in this case, E. L. Williamson executed and delivered to the Mutual Benefit Life Insurance Company, in consideration of the sum of $2800, a described tract of land containing 313-3/4 acres, to secure a loan of $2800. The insurance company gave to Williamson a bond to reconvey title to the land upon payment of the debt. Williamson made a contract with Darby to sell a part of the timber on a described portion of this tract of land, for $250; and Darby was proceeding to cut and carry away this timber when the insurance company made application for an injunction forbidding the cutting of said timber, and asked judgment against Darby for $300 as damages. Upon the hearing the insurance company introduced, in addition to the verified petition, only the security deed. The defendant introduced his verified answer, and testimony of witnesses to the effect that Williamson, the holder of the bond for title, is the owner of the equitable title and is in possession of the 313-acre tract of land; that he sold only a small part of the timber on the land to Darby for $250; that should the defendant cut the timber there would then remain on the land sufficient timber for all uses and purposes; that the debt of $2800 was not due, nor was even the last interest installment due; that the holder of the bond for title was recently offered $4800 for the land held as security, and it is well worth that amount; that the land is more valuable for farm purposes than otherwise, and the cutting and removing of the timber which was sold to the defendant will not lessen the value of the same; that the timber sold is of a character that is of low value, being short-leaf, second-growth pine. Under

the foregoing facts I can not concur in the opinion that it is unnecessary to decide whether the vendor in the security deed, who holds a bond for title from the vendee, while in possession of the land and before default in payment of the secured debt or interest thereon can sell the growing timber on the land, where the sale of the growing timber would not impair the value of the security. To my mind this is the only real question in the case.

The Court of Appeals, in *Guin* v. *Hilton & Dodge Lumber Co.,* 6 *Ga. App.* 484 (65 S. E. 330), *Buck* v. *Duvall,* 11 *Ga. App.* 853 (76 S. E. 1053), *Scott* v. *Ward,* 23 *Ga. App.* 416, 420 (98 S. E. 412), *Colquitt County Land Co.* v. *Rowell,* 30 *Ga. App.* 738 (119 S. E. 223), and *Boswell* v. *Ivie,* 31 *Ga. App.* 807 (122 S. E. 97), has uniformly held that the holder of a bond for title, in possession of the land described in the reconveyance bond, could cut and sell timber. Undoubtedly, as a general rule, injunction will lie when the cutting of the timber impairs the value of the vendee's security. *Small* v. *Slocumb,* 112 *Ga.* 279 (37 S. E. 481, 53 L. R. A. 130, 81 Am. St. R. 50) ; *Bitting* v. *Chattooga County Bank,* 159 *Ga.* 78 (124 S. E. 899). But there is a variation of the rule where a bond for title is given, which has been recognized not only in this State but also in numerous other jurisdictions. In the case at bar the evidence to the effect that the value of the vendee's security will not be impaired, so as to jeopardize the collection of his debt, is absolutely uncontradicted. According to the evidence the removal of the second-growth, short-leaf pine trees will render the place more valuable than before; for it is testified that the land is good land, and is far more suitable for cultivation than for timber of the character now growing thereon. It was held in *Small* v. *Slocumb,* supra, "To cut timber and clear land so as to make arable what was before woodland is not, in this State, waste unless the value of the land is thereby impaired." While the precise question has never been directly decided by this court, still, in *Broxton* v. *Phillips,* 96 *Ga.* 792 (22 S. E. 945), it was held in effect that the vendee in possession under a bond for title is to all intents and purposes the owner of the land until the vendor in some manner prescribed by law recovers possession of the land. In that case this court, speaking through Mr. Justice Atkinson, said: "Where the tenant undertakes to acknowledge a tenancy both under the vendor and the vendee, and distress warrants are issued at the

instance of both the vendor and the vendee and levied upon the property of the tenant, the warrant in favor of the vendee is the legal lien, and should prevail." In that case Broxton contracted to sell Ennis the land according to the terms of a bond for title and certain notes, none of which were paid, and Ennis, over Broxton's protest, rented the place to a tenant named Downing, and himself moved from the premises. Later Downing rented the same premises for the same term from Broxton, because he knew there was going to be a lawsuit about the place. None of the notes having been paid, Broxton contended that the bond for title was then out, and that he then and there rescinded the contract to sell. Upon this the court held: "Where, under a contract for the sale of land, the vendor executes to the vendee the usual bond for titles, and delivers to him the possession of the premises, even if the latter fail to pay the purchase-money at maturity, he may nevertheless retain possession, either by himself or his tenant, until such time as he shall be legally evicted therefrom by the vendor; and the tenant who enters under the vendee can not, without first surrendering his possession to the latter, attorn to the vendor upon any supposed right of the latter, without the consent of the vendee to rescind the contract of sale;" and thereupon the rent for the year 1894 was awarded to Ennis.

The fact that injunction is a proper remedy only when the holder of the legal title can show that the value of his security is being depreciated is strong proof that the law does not contemplate that he shall have any interest in the land other than as security for the payment of his debt, and that with this exception the holder of the bond for title is in equity the full and complete owner of the land so far as its management and control is concerned. While at common law cutting of timber was waste, in this country the clearing of arable land, which now entails considerable expense, frequently adds to the value of the property; and therefore, as held in *Small* v. *Slocumb,* supra, it is not necessarily waste. It is a matter of common knowledge and well-nigh universal practice in this State that transactions in realty containing valuable timber or mineral deposits are made with the understanding, either expressly stated or tacitly so understood, that the purchaser will in a large measure be enabled to pay the purchase-price by the conversion of these natural resources into money.

This court has frequently held that a security deed, though passing the legal title, is in practical effect the equivalent of an equitable mortgage. As to this, it is stated in 41 C. J. 623, § 597, that "While some courts follow the rule that the property in timber cut on the mortgaged premises is in the mortgagee and that a purchaser from the mortgagor takes it subject to the paramount rights of the mortgagee, other courts follow the rule that, although the lien of a mortgage covers standing timber on the mortgaged premises, the mortgagor, remaining in possession before default, may cut and sell the timber, and that the mortgagee can not pursue it into the hands of purchasers, . . and this right of the mortgagor in possession to cut and sell timber has been recognized as existing even after default and until foreclosure." The Court of Appeals of Georgia, in *Boswell* v. *Ivie,* supra, and the Supreme Court of Texas, in *Chavez* v. *Schairer, 199 S. W. 892,* upheld the right of the mortgagor in possession to cut and sell timber even after default. It is admitted in this case that there is as yet no default in payment of principal or interest; and a larger number of courts by far hold that the mortgagor may cut and sell timber before default than those courts who deny that right. Under the evidence in the record I am of the opinion that the cutting of the timber in this case should not have been enjoined.