HARRIS, survivor, *v.* GRANT *et al.*

1. The holder of a junior mortgage on personal property, who with knowledge of the existence of a senior mortgage thereon receives the mortgaged property from the mortgagor, and with his consent appropriates it in whole or in part to the satisfaction of the junior mortgage, and then places it beyond the reach of an execution issued upon the foreclosure of the senior mortgage, is liable to the plaintiff in that execution for the value of the property thus received and disposed of; not, of course, exceeding the amount due upon such execution. This is true although the junior mortgagee did the acts mentioned, solely for the purpose of collecting his own debt.

2. On the other hand, the holder of a senior mortgage on personal property, who in good faith and without fraud takes the same from his debtor at a fair and reasonable price or valuation, and appropriates it to the satisfaction of such mortgage, does not, for so doing, become liable to the holder of a junior mortgage on the same property.

May 13, 1895. Brought forward from the last term.

Complaint. Before Judge HUNT. Macon superior court. May term, 1894.

RYALS & STONE and S. A. REID, for plaintiff. GUSTIN, GUERRY & HALL and J. W. HAYGOOD, for defendants.

SIMMONS, Chief Justice.

Johnson & Harris filed their petition against Grant and DeVaughn, alleging in substance that Grant was indebted to them in a certain sum, and that to secure this debt he had executed to them a mortgage upon a stock of goods then in his store, which mortgage was duly recorded; that prior to the giving of this mortgage he had executed one in favor of DeVaughn, for $250, on which he had paid $50, and that subsequently to his mortgage to the plaintiffs, he executed another mortgage to DeVaughn, the last mentioned mortgage being for $205; that when the plaintiffs pressed Grant for the payment of their debt, he and DeVaughn, with intent to defraud them, made an agreement whereby Grant turned

over to DeVaughn all the dry goods in his store which were covered by his mortgage to the plaintiffs, DeVaughn knowing at the time he took the goods that the plaintiffs held a mortgage upon them of prior dignity to DeVaughn's second mortgage; that DeVaughn moved the goods from Grant's storehouse to his own, and mixed them with his own goods so that they could not be identified; and that after the foreclosure of the plaintiffs' mortgage, DeVaughn refused to point them out to the sheriff so that he might levy upon them; that the remainder of the goods left in Grant's store proved, upon a sale thereof by the sheriff, to be insufficient to pay off their mortgage, and that Grant was insolvent and unable to pay the balance due them. The plaintiffs therefore prayed for damages against DeVaughn. There was no demurrer to the declaration. On the trial the plaintiffs proved the knowledge of DeVaughn of their mortgage, and that DeVaughn received from Grant goods sufficient not only to pay his first mortgage, which was prior to that of the plaintiffs, but also to pay the second mortgage to DeVaughn, which was subsequent to that of the plaintiffs. On motion of DeVaughn the court granted a nonsuit as to him, but judgment was rendered against Grant for the amount due by him to the plaintiffs.

1. The question to be determined is whether, under the facts alleged, the plaintiffs had a cause of action against DeVaughn; and if so, whether the testimony submitted made a *prima facie* case for a recovery. We have been unable to find any decision of this court which deals directly with the question; but on general principles and according to the analogies of the law, we think the plaintiffs did have a cause of action. "It is the pride of the law that where it recognizes or creates a private right, it also gives a remedy for the wilful violation of it." "It is also a sound principle, that where the fraudulent misconduct of a party occasions

an injury to the private rights of another, he shall be responsible in damages for the same." The plaintiffs had a lien superior in dignity to one of DeVaughn's liens. With knowledge of this fact, DeVaughn colluded with the mortgagor and obtained from him goods which he knew were covered by the superior lien, and which were worth considerably more than enough to discharge his first lien. He mingled these goods with his own, so that they could not be identified and levied upon, and thus deprived the plaintiffs of their legal rights under their mortgage. This was a wrong which, in our opinion, gave them a right of action against him. After the payment of DeVaughn's first mortgage, the plaintiffs had the highest lien upon the goods, and therefore had an interest in them. They had a right under the law to have the goods seized and sold to pay their debt. By DeVaughn's action this right was rendered unavailable; it was as much lost to them as if he had destroyed them. If one who knows that another has a mortgage on personal property wilfully destroys the property, he will certainly be subject to an action by the mortgagee for damages. And so we think, if a junior mortgagee knows of a superior mortgage lien, and by collusion with the mortgagor secures the goods and hides them or mixes them with his own so that they cannot be identified, seized and sold, the senior mortgagee would have equally a right of action against such junior mortgagee for damages; and that this is true although the junior mortgagee may have acted solely for the purpose of securing his own debt. He has no right to thus deprive the senior mortgagee of the priority which the law gives him; and if he does so, we think he should be held liable for such damage as the senior mortgagee may thereby sustain. As bearing upon this question, see: Jones, Chattel Mortgages (4th ed.), §490; Yates v. Joyce, 11 Johns. 135; Ross v. Menafee, 25 N. E. Rep. (Ind.) 546;

Boyd v. Morris, 10 S. W. Rep. (Ind.) 331; McFadden v. Hopkins, 81 Ind. 459; Randall v. Higbee, 37 Mich. 40; Jackson v. Turrell, 10 Vroom (N. J.), 329; 3 Denio (N. Y.), 232. It seems that in those States where a mortgage passes the legal title to the property mortgaged, the mortgagee is entitled to the full benefit of the entire property for the payment of his debt, but in this State, where the mortgage is only a security and does not pass title, an action by the mortgagee for any injury to his security must be based, not upon the injury to the land or the goods, but upon the loss occasioned to him by the impairing of his security; and the measure of his damages would be the value of the property received and disposed of by the defendant, not, of course, exceeding the amount due upon the mortgage.

2. As we have seen, DeVaughn had one mortgage superior to that of the plaintiffs. If he received goods from the mortgagor in good faith and at a fair and reasonable price for the purpose of paying this mortgage, he could not be held liable to the plaintiffs for the goods thus received. This mortgage being senior to theirs, his taking the goods *bona fide* in payment of the same would not deprive the plaintiffs of any right, and therefore would not give them a cause of action against him. He could only be held liable for the excess in the value of the goods over the amount of his prior mortgage.

*Judgment reversed.*