1. If a warehouseman, who receives cotton for storage, knows of a superior mortgage lien thereon, and sells and secretes the cotton and thus puts it beyond the power of the mortgagee to enforce this lien, he thereby commits a tort, and the mortgagee has a right of action against such warehouseman for such damages as he sustains. The measure of damages is the value of the property wrongfully secreted and sold by the warehouseman, not, of course, exceeding the amount of his debt, principal and interest. Harris v. Grant, 96 Ga. 211 (23 S. E. 390);Benton v. McCord, 96 Ga. 393 (23 S. E. 392); Reid v. Matthews, 102Ga. 189 (29 S. E. 173, 66 Am. St. R. 164); DeVaughn v. Harris, 103Ga. 102 (29 S. E. 613); Anderson v. Adams, 117 Ga. 919 (43 S. E. 982). This rule is not different where the mortgage embraces other property than that concealed and disposed of by the warehouseman, the mortgagee having the right to enforce his mortgage against any of the mortgaged property.
2. Where a tort of the character dealt with in the first headnote is committed by a surviving partner, whose firm received such cotton for storage from the mortgagor, the firm would not be liable to the mortgagee for such concealment and disposition of the mortgaged property by the surviving partner. Civil Code (1910), § 3164.
3. Where a suit is brought against a surviving partner for a tort which he commits, of the character above dealt with, for the purpose of holding the firm liable in damages therefor, and the surviving partner is duly served with the petition and process, the action may proceed against him individually, notwithstanding the judgment will not bind the firm assets. Doody Company v. Jeffcoat, 127 Ga. 301 (56 S. E. 421).
4. Applying the above principles, the original petition was not subject
 to general or special grounds of demurrer. *Page 781 
5. A warehouseman receiving cotton for storage, who in good faith and without notice, actual or constructive, of a pre-existing mortgage, makes advances thereon to the owner, can in defense to an action brought by the mortgagee against him, alleging wrongful concealment and disposition of such cotton with notice of such mortgage, insist that he did not wrongfully conceal and dispose of the cotton, but that he made such advances in good faith and without notice, actual or constructive, of the existing mortgage; but notwithstanding such facts of defense, the warehouseman would not be entitled to an injunction staying the suit of the mortgagee until the mortgagee had exhausted other property than the cotton embraced in his mortgage.
6. Applying the above principles, the court did not err in sustaining the demurrer to the cross-action of the defendant. Nothing herein contained shall be held to conclude the defendant from pleading the above facts in defense to an action brought by the plaintiff.
During the year 1920 McMurrain Brothers, a partnership composed of J. L. and S. B. McMurrain, in their capacity as proprietors, operated a farm located in Stewart and Chattahoochee Counties, by employment of croppers and wage-laborers. On May 1, 1920, McMurrain Brothers acting by J. L. McMurrain executed to the Farmers State Bank a promissory note for $2100, containing a clause creating a mortgage on "the following property, which is the property of McMurrain Brothers in our possession and wholly unincumbered, to wit: 150 head of cattle, fifty head of hogs, 16 head of mules, six head of horses. Also my entire crop of cotton, cottonseed, corn, fodder, peas, potatoes, and sugarcane, beans and peanuts, which are now up and growing on our 20-horse crop on McMurrain Place in Stewart Chattahoochee Counties, Georgia." The instrument also provided that the mortgage should secure another described note of the makers to the bank for $3833.91. During October and November, 1920, the mortgagors stored a part of the mortgaged crops, consisting of 84 bales of cotton, with Blanchard, Humber Company of Columbus, Georgia, being a partnership composed of W. R. Blanchard and L. F. Humber, as warehousemen for safekeeping. L. F. Humber died on or about May 18, 1922; and in July, 1922, W. R. Blanchard as surviving partner wrongfully (as was alleged) sold 26 bales of cotton to persons unknown to the bank, for the sum of $2,265.54, for the purpose of defeating the lien of the mortgage, *Page 782 
and did thereby impair the lien of the mortgage by placing the cotton beyond the reach of the mortgagee. On November 15, 1922, the bank foreclosed the mortgage on the remaining 58 bales of cotton, and caused the fi. fa. to be placed in the hands of the sheriff for levy and sale. At that time the defendant as surviving partner had possession of the 58 bales of cotton, but, notwithstanding the sheriff's demand therefor, so secreted it that the officer was unable to levy the fi. fa. Shortly thereafter, for the purpose of defeating the lien of the mortgage, the defendant as surviving partner sold the cotton to persons unknown to the bank for the price of $6,637.80, and converted the proceeds of sale, thereby placing the cotton beyond the reach of the bank and impairing the lien of its mortgage. The defendant had actual notice of the mortgage at the time of and prior to both sales; for that on or about April 1, 1920, J. L. McMurrain told L. F. Humber as a member of the firm that the bank had advanced him money to make the crops; and prior to the first storage of cotton in October, 1920, J. L. McMurrain told L. F. Humber and the son of the latter, who was also agent of the firm, that the bank had a mortgage on the cotton. When Blanchard, Humber Co., on November 15, 1920, made an advance of $2150 to McMurrain Brothers, they did so by making a check on the bank directly to the bank, "in order that the indebtedness of McMurrain Brothers [to the bank] might thereby be reduced by the amount of such check;" and on November 14, 1922, the cashier of the bank exhibited to W. R. Blanchard as surviving partner the original mortgage, and Blanchard received and read it. On December 19, 1922, the bank instituted an action for damages against W. R. Blanchard as surviving copartner. The petition as amended alleged all that is stated above; and further, that at the time of the suit McMurrain Brothers owed a balance on the mortgage of $3871.18 principal, together with $614.13 as interest to November 15, 1923, and subsequent interest at 8 per cent. per annum, in which amount the defendant had damaged the plaintiff; and it prayed for a money judgment.
The defendant filed general and special demurrers, and a crosspetition alleging substantially the following: In October and November, 1920, McMurrain Brothers sent 84 bales of cotton to Blanchard Humber (called defendants), as warehousemen, commission *Page 783 
merchants, and cotton factors. Before that time McMurrain Brothers were indebted to defendants approximately in the sum of $1590 for money used in making a crop in 1920. After the cotton was stored defendants loaned McMurrain Brothers an additional sum of $4545.59 upon the cotton as security. On November 27, 1920, McMurrain Brothers, being indebted to defendants in the sum of $6135.59, gave to them one note for $1328.50 secured by 26 bales of the cotton, and a separate note for $4807.09 secured by all of the 84 bales of cotton in possession of the defendants. On July 17, 1922, defendant sold the 26 bales of cotton, upon direction of McMurrain Brothers, for $2265.54, and applied the proceeds of sale to payment of the first note and an item of $777.51 due on open account, leaving a balance on the note of $18.12. Prior to November 15, 1922, defendant notified McMurrain Brothers that unless the balance on the advances was paid by the day last mentioned, he would exercise his authority as a factor and his power of sale as expressed in the note, and sell the balance of the cotton. On November 14, 1922, approximately two years after defendants had acquired their factors' lien on the cotton, the bank notified them that it claimed the lien on both lots of cotton in virtue of the "crop mortgage" for the year 1920, which was set out in the original petition. This was the first notice of any kind that defendants had of the mortgage, and defendant does not know that the cotton was covered by the mortgage or that it was grown on the farm of McMurrain Brothers. The defendant's demand upon McMurrain Brothers for the payment of the balance due was not complied with; and defendant sold the balance of the cotton on November 15th, 1922, to satisfy the advances made thereon. Other allegations were, that the bank's mortgage covers, in addition to the cotton, other specified property on which the defendant has no lien; that defendant does not know what part of the property is still owned by McMurrain Brothers, but it is charged on information and belief that there is still in possession of McMurrain Brothers sufficient of the property to pay the balance of the debt to the bank as alleged in the original petition. The bank cannot claim injury or damage for impairment of its security until it has exhausted the property on which it has a lien other than the cotton on which the defendant has a lien. The prayers were (a) for discovery as to what portion *Page 784 
of the property described in the cross-petition McMurrain Brothers still own, or what other property or collateral the bank has for its debt; (b) that the bank's action be stayed until the plaintiff exhausts all other collateral that it has for its debt; (c) for general relief.
The demurrers to the original petition (omitting certain grounds that were not insisted upon in the briefs of the attorney for the plaintiff in error and certain grounds that the briefs stated had been met by amendment) were: (1) The petition as a whole should be dismissed on the ground that it does not set forth a cause of action either in law or in equity. (2) Paragraph eleven should be stricken, because the allegations thereof are irrelevant and immaterial, and no facts are therein alleged to show in what manner the defendant wrongfully appropriated the proceeds of sale, and are conclusions of the pleader. (3) Paragraph sixteen should be stricken, because no facts are set forth therein showing how or in what manner the sale of 58 bales of cotton wrongfully and fraudulently impaired and destroyed the lien of the petitioner and placed the same out of the reach of the petitioner, and the allegations of the petition amount to mere conclusions of the pleader. (4) Paragraph seventeen should be stricken, because the allegations thereof are irrelevant and immaterial, and no facts are set forth showing how, wherein, or in what manner the defendant wrongfully converted the proceeds of sale, and the allegations amounted to mere conclusions of the pleader. (5) Paragraph nineteen should be stricken, because it nowhere appears that the plaintiff has exhausted the other security its mortgage covers, or whether plaintiff has received anything from said security; and until it exhausts its other security plaintiff cannot claim it has been damaged in the full amount of its debt due to it by McMurrain Brothers.
A general demurrer was interposed by the plaintiff to the defendant's cross-petition, in several forms of statement, the substance of which was that no facts were alleged which would authorize the relief sought, and that the defendant had an adequate remedy at law by setting up in his answer to the suit the several matters as relied on as a basis for the relief sought, and it appears the defendant seeking equitable relief has not come into the court with clean hands. The judge sustained the special demurrer *Page 785 
number five, relating to paragraph fourteen of the original petition, and there was no exception to this ruling; and consequently paragraph fourteen of the petition and the demurrer thereto have been omitted from this statement of facts. All other grounds of general and special demurrer to the original petition were overruled. The judge sustained the demurrer filed by the plaintiff, and there-upon dismissed the cross-petition. The defendant excepted to these judgments.
 *Page 128