26474.   MILLS LUMBER COMPANY *v.* MILAM, trustee.

DECIDED JANUARY 14, 1938.

*William A. Ingram, Herschel Parham,* for plaintiff in error.
*Finley & Henson, Neel & Ault,* contra.

GUERRY, J.   This suit was transferred to this court by the Supreme Court.   C. M. Milam, trustee, the grantee in a security deed, filed a suit for injunction, damages, and accounting against Etowah Development Company, the grantor, and Mills Lumber Company.   The judge granted an injunction, and the suit was thereafter amended, and damages were prayed for in a named sum. Error is assigned by Mills Lumber Company on the overruling of a general demurrer.   The petition alleged, in substance: On April 16, 1929, Etowah Development Company conveyed to J. A. Vaughan all the saw timber, including the right to cut and remove the same, on certain described lands in Bartow and Cherokee Counties.   This timber contract contained a provision that Vaughan, his heirs and assigns, "shall have three years from the date hereof in which to cut the timber hereby conveyed; and if, at the expiration of said time, said second party [Vaughan] his heirs and assigns, desires any additional time in which to cut timber, first party [Etowah Development Company] hereby extends said time 'for a period of one year from said three-year period upon the payment to first party by second party, his heirs and assigns, of one hundred

dollars; and at the expiration of said first-year extension, if any additional time is desired by second party, his heirs or assigns, first party shall extend the time an additional one year upon the payment of another one hundred dollars. In no event shall the time in which to cut said timber be extended more than two years from the expiration period herein stipulated." Vaughan transferred and assigned his interest in the timber contract to W. B. Farrar on April 17, 1929; and on August 21, 1931, Etowah Development Company executed to W. B. Farrar an instrument extending the Vaughan timber sale from April 16, 1932, to April 16, 1934. On April 24, 1933, W. B. Farrar quitclaimed his interest in the timber to Mills Lumber Company; and on October 20, 1933, Etowah Development Company extended the contract to April 16, 1936. On October 1, 1930, Etowah Development Company executed to the plaintiff, C. W. Milam, trustee, a deed to the described lands, to secure a loan of $40,000. This deed, after describing in detail the property conveyed, provided: "The above being all of the property owned by first party [Etowah Development Company] which was described and conveyed in trust deed from first party to J. W. Vaughan, trustee, recorded on page 391 of deed book No. 59 in the office of the clerk of Bartow County superior court, except the lands, rights, privileges, and easements subsequently conveyed in the following conveyances to wit: Etowah Development Company to J. A. Vaughan, recorded in deed book No. 66, page 280, sale of timber."

The plaintiff alleged that he never assented to any extension of the time for cutting the timber on said lands, and any such extension was illegal and in violation of its rights; that since April 16, 1934, Mills Lumber Company, because of the purported extension agreement executed by Etowah Development Company, entered on said lands and was illegally cutting and removing said timber; that the value of the property was being decreased by the removal of the timber, and the value thereof would be insufficient to secure the loan thereon made by the plaintiff. By amendment it was alleged that since filing the suit the plaintiff had sold the land under the power of sale contained in the security deed, for a named amount which was insufficient to pay the loan, and that the timber cut and removed by Mills Lumber Company since April 16, 1934, under the alleged illegal extension agreement by

Etowah Development Company to it, so decreased the value of the property and impaired it as security as to cause the loss in the amount sued for. One of the controlling questions concerning the merits of this petition seems to be whether or not, upon termination of the original timber contract between Etowah Development Company and J. A. Vaughan, the legal title to the timber reverted to Etowah Development Company because it had been excepted from the security deed to the plaintiff. If the legal as well as the equitable title to the timber reverted to Etowah Development Company, it had the right to extend the time in which to cut and remove the timber, without regard to the conveyance to the plaintiff. If the equitable title only reverted to Etowah Development Company because of the security deed to the plaintiff, it might control the timber, if no objection was made, only to the extent that the security held by the plaintiff was not impaired. Under the provisions of the conveyance from Etowah Development Company to the plaintiff, the fee-simple title was conveyed, except the land rights, privileges, and easements in the lease and conveyance of timber by it to J. A. Vaughan. Under the lease to Vaughan, he had no title to any timber located on such land which was uncut on April 16, 1934. His original contract terminated on that date. Had Etowah Development Company executed no other conveyance of the land or timber, the fee-simple title would have revested in it. Having conveyed the land on which the timber was located, the timber was also conveyed, unless there was a special exception thereof, and the grantee in such deed, the plaintiff, became vested with the title.

■ In *Sutton* v. *Gray Lumber Co.*, 3 *Ga. App.* 377 (60 S. E. 2), the headnote is as follows: "In January, 1882, S. conveyed to B. 'all the pine timber suitable for saw logs of every size and dimension' on a given lot of land, 'provided the same be cut within five years from date.' In December, 1882, S. conveyed to P. the land lot on which the said timber was situated,—the deed containing this clause following the description of the land: 'The sawmill timber heretofore sold to Henry Banks excepted.' *Held*, that the timber on the described land lot, not cut within the five years, did not revert, at the expiration of the time limited, to S. or his heirs, but became the property of the then owner of the land." It was said in the opinion: "This conveyance was not

unconditional, but was limited by the proviso that the timber was to be cut within five years from the date of the conveyance. In other words, whatever amount of timber was cut within the five years, the title thereto passed, under the terms of the deed. If none was cut within the five years, the title to none vested in the grantee, and all that remained on the land lot at the expiration of the five years, uncut, was a part of the realty, and the title to the said timber passed to whomever owned the realty at the expiration of the five years."

The plaintiff in error contends that a grantor in a security deed has the right and may except or reserve, either expressly or by implication, the timber on the land conveyed, in which case the grantee has no right therein. As to an express reservation we agree. In *Johnson* v. *King Lumber Co.,* 39 *Ga. App.* 280 (147 S. E. 142), such an express reservation was made. The grantor in that case "reserved the right to cut and remove *at any time* [italics ours] a part or all of the timber now on the lands . . described." A reservation for a limited time does not afford to the grantor, after that time, any right to cut and remove the timber. In *Levis* v. *Parrott Lumber Co.,* 119 *Ga.* 476 (46 S. E. 647), it was held: "Where A grants to B the sawmill and turpentine privileges on a given lot of land, but also provides that 'all timber remaining [thereon] to revert' to A after a period named, and afterwards, before the period expires, conveys the lot to C, with this provision following the description of the land: 'all timber on the above [land] sold prior to this day reserved,' the trees not removed by B within the time limited will be the property of A, and not of C." The express language of the conveyance there involved reserved in the grantor the title to the timber on the land. In *Shaw* v. *Henderson Lumber Co.,* 141 *Ga.* 47 (80 S. E. 322), it was held: "A deed conveying a certain described tract of land contained the following provision: 'pine timber for sawmill purposes 14 inches 2 feet above the ground and up, and the turpentine privileges also . . excepted from this sale.' *Held,* that the title to such timber did not pass to the grantee, but remained in the grantor." In that case the instrument being considered expressly reserved the title to certain timber in the grantee. There is no question that under the conveyance of timber by Etowah Development Company to Vaughan all of Vaughan's rights there-

under terminated on April 16, 1934. Before this date Etowah Development Company conveyed, by a security deed to the plaintiff, the lands on which the timber sold to Vaughan was located. Except for that security deed, the title to the uncut timber on the described lands on April 16, 1934, was in Etowah Development Company. The deed to the plaintiff, however, stated that "the intention of this deed of trust is that it shall convey to second party all of first party's right, title, and interest in and to all property, . . whether specifically mentioned or not." Another provision was that the security or trust deed conveyed all of the property of Etowah Development Company, "except the lands, right, privileges, and easement . . conveyed in the following instruments," the instruments being described, one of which was "lease and conveyance of timber by Etowah Development Company to J. A. Vaughan." The clear intention of this instrument was to convey to Milam any and all rights in and to said lands except the rights which had been granted to Vaughan. In *Uvalda Naval Stores Co., v. Cullen,* 165 *Ga.* 115 (139 S. E. 810), it was said: "A deed to secure debt passes to the vendee the title to the property thereby conveyed, till the debt which the conveyance was made to secure shall be fully paid, 'and shall be held by the courts of this State to be an absolute conveyance, with the right reserved by the vendor to have said property reconveyed to him upon the payment of the debt or debts intended to be secured agreeably to the terms of the contract, and not a mortgage.' Civil Code (1910), § 3306." The security deed executed by Etowah Development Company to the plaintiff is to be construed as excepting therefrom all the rights theretofore conveyed in the lease contract to Vaughan, and not as reserving title to it of all the timber remaining uncut at the expiration of the lease contract.

■ The suit in the present case is expressly predicated upon the proposition that the acts of Etowah Development Company and its grantee, Mills Lumber Company, have impaired the value of the security held by the plaintiff. The petition as amended prays that plaintiff have "a general judgment against defendants, [Etowah Development Company and Mills Lumber Company] in the sum of $15,000 or such sum as the court may find the defendants damaged petitioner by depreciating the value of petitioner's security by cutting of timber from said premises since April 16,

1934." There is in the petition no allegation of fraud or collusion between the defendants. The Etowah Development Company, the grantor in the security deed, was in possession of the land on April 16, 1934, and at the date of the filing of the present suit. As already stated, it granted to Mills Lumber Company the further right to cut and remove the timber until April 16, 1936. The Mills Lumber Company was cutting and removing the timber at the date of the present action. The judge enjoined it from cutting any more timber or removing any timber which had been cut but was still on the premises. The grantor in a security deed, in cases of this character, occupies the same relationship to the grantee therein as the vendee in a bond for title occupies to the vendor. In *Fulton County* v. *Amorous,* 89 *Ga.* 614 (16 S. E. 201), it was said: "One in possession of land under a bond for titles from the true owner, with purchase-money partly paid, is the owner of the freehold relatively to all persons except the maker of the bond and those claiming under him. In case the premises are taken or damaged for public purposes, the possessor under the bond is entitled to full compensation; certainly so by showing affirmatively the acquiescence of his vendor in his claim, and this may be done by producing in evidence a conveyance from the latter, made pending the action and passing the absolute title in fee simple." In *Guin* v. *Hilton & Dodge Lumber Co.,* 6 *Ga. App.* 484 (65 S. E. 330) it was held that one in possession of land under a bond for title, with part of the purchase-price paid, who cut and sold logs from the land so held, could collect therefor from the purchaser who had paid the contract price of the logs to the vendor in the bond for title, such vendor having taken "no steps to protect the value of the property, nor prosecuted to a successful conclusion an action to recover possession of the premises." The grantee in a security deed, or the vendor in a bond for title, without taking steps to protect the property or recover possession may not be said to be the owner of the land or of the timber growing thereon. Such holder of the legal title could, without question, ask and obtain the aid of a court of equity against the grantor in the security deed or the vendee in a bond for title, and the purchaser of the timber, where it can be shown that the cutting and removing the timber will impair the security. *Darby* v. *Mutual Benefit Life Insurance Co.,* 165 *Ga.* 516 (141 S. E. 410).

"One who purchases from one in possession of land under a bond for title timber cut from the land acquires such interest or title thereto as will defeat an action in trover by the obligor in the bond; and it is immaterial that the person in possession of the land had no permission from the holder of the legal title to the land to sell the timber, other than that inhering in his rights as purchaser and holder under the bond for title." *Colquitt County Land Co.* v. *Rowell,* 30 *Ga. App.* 738 (119 S. E. 223). It has been held that the grantor in a security deed while remaining in peaceable possession of the land, although the debt secured by such deed is past due, may defeat an action in trover brought by the grantee in the deed to recover the timber cut from such land in the hands of the grantor or a purchaser from him. *Boswell* v. *Ivie,* 31 *Ga. App.* 807 (122 S. E. 97). It has also been held that no action may be brought by the grantee in a security deed to recover the value of the timber cut from the land, although such cutting was without the knowledge and consent of the grantee, and although the party doing the cutting had knowledge of the fact that the grantee held the legal title. *Scottish-American Mortgage Co.* v. *King Lumber Co.,* 35 *Ga. App.* 524 (134 S. E. 140). "Since the vendee of land held under a bond for title from the vendor is, as to third persons, to all intents and purposes the true owner of the land, it follows that one who purchases timber from the vendee and removes it from the land is not, in the absence of any contractual relation with the vendor, accountable to the vendor for the value thereof." *Candler* v. *Dodge County Lumber Co.,* 34 *Ga. App.* 289 (129 S. E. 289). In *Harris* v. *Grant,* 96 *Ga.* 211 (23 S. E. 390), it was said: "If one who knows that another has a mortgage on personal property wilfully destroys the property, he will certainly be subject to an action by the mortgagee for damages. And so we think, if a junior mortgagee knows of a superior mortgage lien, and by collusion with the mortgagor secures the goods and hides them or mixes them with his own so that they can not be identified, seized and sold, the senior mortgagee would have equally a right of action against such junior mortgagee for damages; and that this is true although the junior mortgagee may have acted solely for the purpose of securing his own debt. He has no right to thus deprive the senior mortgagee of the priority which the law gives him; and if he does so, we think he should be held liable for

such damage as the senior mortgagee may thereby sustain." Quoting further from this decision: "It seems that in those States where a mortgage passes the legal title to the property mortgaged, the mortgagee is entitled to the full benefit of the entire property for the payment of his debt; but in this State, where the mortgage is only a security and does not pass title, an action by the mortgagee for any injury to his security must be based, not upon the injury to the land or the goods, but upon the loss occasioned to him by the impairing of his security, and the measure of his damages would be the value of the property received and disposed of by the defendant, not, of course, exceeding the amount due upon the mortgage."

"If a warehouseman, who receives cotton for storage, knows of a superior mortgage lien thereon, and sells and secretes the cotton and thus puts it beyond the power of the mortgagee to enforce this lien, he thereby commits a tort, and the mortgagee has a right of action against such warehouseman for such damages as he sustains." *Blanchard* v. *Farmers State Bank,* 158 *Ga.* 780 (124 S. E. 695). See also *Todd* v. *Hurst Supply Co.,* 17 *Ga. App.* 98 (86 S. E. 255) ; *Peoples Bank of Richland* v. *Farmers State Bank,* 32 *Ga. App.* 42 (122 S. E. 636). In *Streelman* v. *Turner,* 32 *Ga. App.* 733 (124 S. E. 549), it was said: "A third person, who, with knowledge of the existence of such a [landlord's] lien *wrongfully and fraudulently* [italics ours] interferes for the purpose of impairing and destroying the value of the lien of the landlord by purchasing the property from the tenant and afterwards disposing of it, is liable to the landlord for any loss or damage sustained by reason of such wrongful interference." See also *Benton* v. *McCord,* 96 *Ga.* 393 (23 S. E. 392). In *DeVaughn* v. *Harris,* 103 *Ga.* 102 (29 S. E. 613), it was held that one may not, though to collect his own debt, take personal property in possession of the mortgagor when such person has actual knowledge of the existence of a prior lien on the property, and dispose of it to his own use. The underlying principle of these decisions is that one who, in attempting to preserve his own rights, fraudulently deprives another of a right will be liable to such person. *DeVaughn* v. *Harris,* supra. A purchaser of timber, in good faith, from one who is in peaceable possession and control of land, who cuts and removes such timber, will not be liable to the holder of the legal title to such land under a deed to

secure debt, without some fraud or collusion between the one·in possession and the holder of the equitable title and such purchaser. From the authorities we deduce this to be the correct rule. As we have pointed out, the holder of the legal title may prevent the impairment of his security; but where he has taken no steps to preserve his security or to obtain the full title to the land, in the absence of fraud he will not be permitted to recover from a third party who has cut and removed the timber on the land by reason of a purchase thereof from the grantor in the security deed, under which instrument the plaintiff holds the legal title. In all the mortgage cases cited above the property conveyed was personal property. In each case the defendant, with actual knowledge, *took the entire thing or article mortgaged,* with the intent to defraud the mortgagee. The grantor in a security deed or the vendee in a bond for title, while in peaceable possession thereof, is, in respect to third persons, the owner of the land. He may bring an action for trespass against a third person (*McClellan* v. *American Tie & Timber Co.,* 135 *Ga.* 370, 69 S. E. 486) ; he may enforce the collection of rent against a third person against the claim of the grantee in the security deed or vendor in the bond for title (*Broxton* v. *Ennis,* 96 *Ga.* 792, 22 S. E. 945) ; he may bring an action for trover to recover timber cut from the land, and the grantee in the security deed or vendor in the bond for title may not. *Boswell* v. *Ivie,* supra. Being thus clothed, one who in good faith purchases from him. timber located on the land, and cuts and removes the timber, is not liable to the grantee in the security deed, although he has knowledge of its existence, for the value of the timber, in the absence of fraud or collusion to impair the security. It can not be said that the purchaser from the grantor in the security deed, who was in peaceable possession of the land, is charged with an intent to defraud or impair the security by the mere fact of purchase with notice of the security deed. No fraud, that is an intent to impair the security of plaintiff, is alleged on the part of the defendants. No actual knowledge of the existence of the security deed is set forth, and it is not alleged that defendants "wrongfully and fraudulently disposed of the timber for the purpose of impairing the security." We are therefore of the opinion that the court erred in overruling the general demurrer.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*